UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL JACKSON                                    :
a/k/a MICHAEL JOHNSON,
                                                   :        10 Civ. 3449 (RJS) (AJP)
                    Petitioner,
                                                   :
         -against-                                          **REPORT AND RECOMMENDATION**
                                                   :
PHILIP HEATH, Superintendent,
Sing Sing Correctional Facility,                   :

                    Respondent.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard J. Sullivan, United States District Judge:**

        Pro se petitioner Michael Johnson seeks a writ of habeas corpus from his March 26,

2008 conviction, after a jury trial in Supreme Court, Bronx County, of first degree assault, fourth

degree criminal possession of a weapon, second degree aggravated harassment, third degree

attempted assault and third degree menacing, and sentence, as a second felony offender, to

concurrent sentences, the longest of which is twelve and one-half years imprisonment.  (Dkt. No.

2: Pet. ¶¶ 1-5; Dkt. No. 5: Killian Aff. ¶ 4 & Ex. 1: Johnson 1st Dep't Br. at 1.)

        Johnson's habeas petition asserts that:  (1) "[t]he verdict was against the weight of

[the] [e]vidence" (Pet. ¶ 12(1)); and (2) the complainant's testimony, in violation of the pretrial

Molineux ruling, that Johnson previously assaulted her and that Johnson had bought crack cocaine, "deprived [Johnson] of his due process right to a fair trial" (Pet. ¶ 12(2)).

For the reasons set forth below, Johnson's habeas petition should be DENIED.

## FACTS

### Background

Johnson's conviction arose from the January 23, 2007 stabbing of Tenaja Cochrane in a "crack house" in the Bronx.  (See Dkt. No. 5: State Br. at 3-4; Dkt. No. 5: Killian Aff. Ex: 1: Johnson 1st Dep't Br. at 2.)  Cochrane, a homeless crack cocaine addict, met Johnson in May 2006.  (State Br. at 2; Johnson 1st Dep't Br. at 5.)  Cochrane and Johnson dated "off and on" until Johnson allegedly "hit" Cochrane in December 2006.  (Dkt. No. 7: Cochrane: Trial Transcript ["Tr."] 27-29.)  On January 20, 2007, Cochrane reconnected with Johnson, but they had a physical altercation two days later.  (State Br. at 2; Johnson 1st Dep't Br. at 5-8.)  On January 23, 2007, Johnson went to the crack house in search of Cochrane and, following another altercation, stabbed Cochrane repeatedly in the neck and arm.  (State Br. at 3-5; Johnson 1st Dep't Br. at 13.) Cochrane sustained life-threatening injuries but received successful treatment at Bronx Lebanon Hospital.  (State Br. at 6-7; Johnson 1st Dep't Br. at 20-21.)  Cochrane spoke with the police and identified Johnson as her assailant.  (Johnson 1st Dep't Br. at 22.)

### Molineux Hearing

On February 20, 2008, Justice Joseph J. Dawson held a pre-trial Molineux hearing.  (Dkt. No. 6: Hearing Transcript ["H."].)  The prosecution sought to introduce evidence at trial that Johnson hit

Cochrane in the face on December 26, 2006.  (H. 3-4.)  The prosecution argued that Cochrane's testimony about the assault would provide a "context for [Johnson's] behavior" and demonstrate that Johnson "attempt[ed] to get control [of Cochrane] through intimidation and through violence."  (H. 5.)  Justice Dawson ruled that evidence of the December assault was inadmissible because the risk of "unfair prejudice outweigh[ed] the probative value" of the testimony.  (H. 8.)  Justice Dawson warned, however, that "if the defense opens the door," he would "let the D.A. walk through it."  (H. 8, 9.)

## The Trial

On February 26, 2008, Johnson proceeded to trial before Justice Dawson and a jury in Supreme Court, Bronx County.  (Dkt. No. 7: Trial Transcript ["Tr."] 1.)

### The Prosecution Case at Trial

Cochrane was a homeless crack cocaine addict when she met Johnson in 2006. (Cochrane: Tr. 27, 31, 86.)  Shortly after she became addicted to crack in 2004, Cochrane stopped working.  (Cochrane: Tr. 26-27.)  Cochrane made an early attempt to "get clean," but when her efforts failed, Cochrane's drug use escalated, resulting in a February 2006 hospitalization for drug-induced aural hallucinations.  (Cochrane: Tr. 27, 141-42.)  Hospital staff conducted a psychiatric evaluation of Cochrane during her stay and released her the following morning. (Cochrane: Tr. 143.)

In May 2006, three months after Cochrane's hospitalization, Cochrane met Johnson at a grocery store in the Bronx and they began dating "off and on" until their relationship ended on "bad terms" in December 2006.[1]  (Cochrane: Tr. 27-28, 29, 31, 81, 86, 123.)

On  January 20, 2007, Cochrane saw Johnson on 174th Street and the two "reconnected."  (Cochrane: Tr. 30-31, 84.)[2]  The encounter marked the first time Cochrane had seen Johnson since their relationship ended nearly a month before.  (Cochrane: Tr. 31, 84, 91.)  Because it was "freezing outside," Johnson offered to purchase Cochrane shoes and a winter coat and invited Cochrane to his apartment, "no strings attached."  (Cochrane: Tr. 31, 85, 90.)  Cochrane, a "homeless . . . addict," "took [Johnson] up on his offer."  (Cochrane: Tr. 31, 86.)  Johnson purchased a pair of Timberland boots and a "down-type" winter coat for her.  (Cochrane: Tr. 32, 85.)

On the evening of January 22, 2007, Cochrane and Johnson had an "altercation" as they left Phillip Carson's crack house on Selwyn Avenue in the Bronx.  (Cochrane: Tr. 32, 89, 112-

---

[1]     Cochrane explained that their relationship ended because Johnson "hit" her.  (Cochrane: Tr. 29.)  Although Cochrane's testimony violated Justice Dawson's Molineux ruling, defense counsel failed to object because he "didn't hear" Cochrane's comment.  (Tr. 180.)  Justice Dawson later agreed that Cochrane "mumble[d] from time to time" and struck Cochrane's testimony about Johnson hitting her from the record.  (Tr. 181.)

[2]     Cochrane gave inconsistent testimony regarding the date of this meeting.  On direct examination, Cochrane testified that Johnson bought her the clothing on January 22, 2007, the day before the stabbing.  (Cochrane: Tr. 30.)  However, on cross examination, Cochrane testified that Johnson purchased the clothing for her "the weekend before the new year," "[r]ight after Christmas."  (Cochrane: Tr. 85, 86.)  Cochrane later stated that her testimony on cross examination was a "mistake" and Johnson had purchased the items for her "two or three days before" the stabbing.  (Cochrane: Tr. 112.)

13.)[3] Cochrane was high and sleep-deprived due to a marijuana and alcohol binge.  (Cochrane: Tr. 113, 122, 138-39.)  The altercation began when Johnson asked Cochrane to come home with him and Cochrane refused.  (Cochrane: Tr. 33, 89, 113.)  In response to Cochrane's rejection, Johnson "swung on" Cochrane with his fist and yelled, "[b]itch, I'll kill you, you're fucking coming home with me, you're going to give me my shit that I bought you, my boots and my coat." (Cochrane: Tr. 33, 78, 114.)  Cochrane's friend intervened, but quickly withdrew when Johnson warned him to "mind [his own] business," and threatened, "I'll kill you too, fuck that." (Cochrane: Tr. 33.)  Johnson again demanded that Cochrane "give [him his] fucking shit," and Cochrane complied.  (Cochrane: Tr. 33.)  Johnson "took his coat, boots and left." (Cochrane: Tr. 33, 114.)  Cochrane testified that although she "wasn't really physically hurt" during the altercation, the incident "[s]cared" her because it was the "first time ever" Johnson had hit her.  (Cochrane: Tr. 34, 36.)

Following the altercation, Cochrane approached a passing police car and asked the officers to accompany her to Johnson's house and retrieve her coat and boots.  (Cochrane: Tr. 33-34,114 118-19.)  When Cochrane arrived at Johnson's house with the police, however, "[n]obody answered the door." (Cochrane: Tr. 34, 115, 119.)[4]  Her efforts thwarted, Cochrane left Johnson's

---

[3]     Cochrane gave inconsistent testimony regarding the location of the January 22nd altercation. On direct examination, Cochrane stated that the altercation occurred as they left Johnson's house.  (Cochrane: Tr. 32.)  When the prosecutor asked Cochrane to clarify where the events took place, Cochrane replied that the altercation occurred near the crack house on Selwyn Avenue and 174th Street.  (Cochrane: Tr. 33, 113.)

[4]     On cross examination, defense counsel confronted Cochrane with her grand jury testimony that Johnson was at home when she and the police arrived at Johnson's apartment.
                                                                                            (continued...)

apartment and walked barefoot to Phillip Carson's crack house to get "high."  (Cochrane: Tr. 34-35, 113, 120; Carson: Tr. 213.)[5/]  Cochrane stayed at the crack house overnight and, although she was "not too sure of the specifics," Cochrane admitted to "doing crack" through the night.  (Cochrane: Tr. 35, 125.)

On January 23, 2007 at approximately 12:00 a.m., Johnson called Carson's house in search of Cochrane.  (Cochrane: Tr. 35, 125-26; Carson: Tr. 213-14.)[6/]  When Cochrane finally

---

[4/]    (...continued)
(Cochrane: Tr. 116-17.)  The grand jury testimony was as follows:

> "Answer: [The police] took my complaint and we went back to Michael Johnson's home to try to remove my belongings.
>
> . . . .
>
> "Question:  And you also stated that Mr. Johnson was home, correct?
>
> "Answer:  Yes."

(Cochrane: Tr. 116.)  When questioned about the discrepancy, Cochrane explained that her testimony at trial was more accurate than her grand jury testimony because her memory at trial was "more fresh."  (Cochrane: Tr. 119-20.)

[5/]    Although Carson declined to refer to his apartment as a "crack den" during cross examination, he conceded that "you might call it that," since people routinely brought drugs to the premises.  (Carson: Tr. 223-24.)

[6/]    Cochrane originally testified that Johnson called Carson's house a "couple of times" (Cochrane: Tr. 38), but stated on cross examination that Johnson only made "a call" (Cochrane: Tr. 126).  Carson testified that Johnson called the house "about four times." (Carson: Tr. 214.)  As a result of this discrepancy, Justice Dawson dismissed three of the original four aggravated harassment counts of the indictment.  (Tr. 275-76; see page 16 n.15 below.)

agreed to speak with Johnson over the phone, Johnson said, "'bitch . . . you brought the police to my house, I'm going to kill you.'"  (Cochrane: Tr. 35.)  Johnson went to the crack house and entered Carson's apartment, despite Cochrane's protests that she was "scared."  (Cochrane: Tr. 38-39, 55, 150; Carson: Tr. 215.)  When Johnson arrived, his demeanor was "[n]ormal, crazy.  Like he was deranged . . . . Smiling one minute and two minutes later like he's an animal.  Two minutes later are you hungry baby, you want to eat, throwing money at me.  Next minute this bitch this. . . . That type of behavior." (Cochrane: Tr. 39.)[7]  Johnson told Cochrane that "what he spoke to [her] about on the phone was definite," meaning Johnson "was going to hurt [Cochrane] for bringing the police to his house." (Cochrane: Tr. 55.) "[A]fraid," Cochrane hid in "the corner of the kitchen" and "begg[ed]" the eight other individuals in the crack house to "make [Johnson] leave." (Cochrane: Tr. 40, 55-56, 128.)  None of the other individuals heeded her request because Johnson "was buying crack and he was giv[ing] it to them." (Cochrane: Tr. 40; see page 12 below.)

        While she was in the kitchen, Cochrane saw a "black handle" at Johnson's waist, and although she "wasn't sure what it was at the time,"  Cochrane screamed:  "'Look he got something look y'all, he's going to kill me.'" (Cochrane: Tr. 56-57.)  Johnson laughed and "dropped his cell phone from his hip as if to say that's what" Cochrane had seen.  (Cochrane: Tr. 57.)  Carson noticed the hostility between Cochrane and Johnson and invited Cochrane into his bedroom to "defuse" the situation.  (Carson: Tr. 216, 220.)  Although Cochrane initially refused, she eventually "backed

---

[7]    By contrast, Carson described Johnson's initial demeanor as "polite."  (Carson: Tr. 215.)

8

in[to]" Carson's room and Johnson followed "in front of her." (Carson: Tr. 216, 220-21; Cochrane: Tr. 57.)

Carson, who also was in the bedroom, saw Johnson pick Cochrane up and "[t]hrow" her to the floor. (Carson: Tr. 216, 220-21.) While she was on the floor, Cochrane saw "something shiny come . . . out of [Johnson's] waist," which she described as a "kitchen knife, like a birthday knife, cake knife" that she had previously seen at Johnson's house. (Cochrane: Tr. 58, 129.)[8] Johnson "started stabbing" Cochrane, and Cochrane fought back, causing Johnson to scream. (Cochrane: Tr. 58, 79.)[9] Cochrane "felt the first stab in [her] arm," and "fell backward over a chair. . . . screaming, 'Please, I'm sorry. I will come home with you. Stop stabbing me. I'm sorry.'" (Cochrane: Tr. 59.)[10] Johnson momentarily "dropped the knife" but quickly resumed stabbing

[8]   Cochrane gave a less detailed description of the knife before the grand jury. (Cochrane: Tr. 129-30.) In response to the question "'[i]s there anything you could tell us about what you saw in [Johnson's] hand,'" Cochrane replied "'I'm just not sure. I did see it was a knife. I know it was something shiny and sharp, that's it.'" (Cochrane: Tr. 129-30.) Cochrane explained that she gave a more detailed description at trial because she was "not as nervous" and her memory was "more clear." (Cochrane: Tr. 130.)

[9]   Although Cochrane initially denied that she had a knife, a hospital receipt confirmed that Cochrane had a "black handle knife" when she arrived at the emergency room. (Cochrane: Tr. 131-32.) Cochrane testified that she did not "pull a knife" on Johnson during the altercation. (Cochrane: Tr. 132.)

[10]   To Carson, whose view of the altercation was partially obscured because he was facing Johnson's back, it looked as though Johnson was just "punching" Cochrane. (Carson: Tr. 216.) Carson saw Cochrane on the floor "a few times" and observed her holding up her hands "to protect herself." (Carson: Tr. 217.) Carson did not see whether Johnson was wielding a knife (Carson: Tr. 217) and did not realize that Johnson had stabbed Cochrane until Cochrane, who was holding "her hands over her throat" to stem the flow of blood,
(continued...)

Cochrane as she "look[ed] him dead in his eyes." (Cochrane: Tr. 59.)  When Johnson finished, he

threw up his hand and left.  (Cochrane: Tr. 59.)  Cochrane did not realize that Johnson had stabbed

her in the neck until she looked in the bathroom mirror and saw that her "whole neck was open."

(Cochrane: Tr. 59.)[11]

When Cochrane realized the extent of her injuries, she left the crack house and

walked two blocks to Bronx Lebanon Hospital, "[c]upping" her neck to stymie the bleeding.

(Cochrane: Tr. 61-62; Carson: Tr. 218.)  Cochrane refused help on the way to the hospital because

she "knew [she] was high off of crack cocaine" and "didn't want [her] body to depend" on others.

---

[10]    (...continued)
announced:  "'[h]e stabbed me.'"  (Carson: Tr. 218.)

[11]    On cross-examination, Cochrane used the word "accident" to refer to the stabbing:

Q.  Now Ms. Cochrane, I'm going to ask you did there come a time when you
reconnected with Michael Johnson?

A.  Two days before the accident.

Q.  Okay, and you --

THE COURT:  I'm sorry, what was that?

THE WITNESS:  Two days before the accident.

Q.  Are you referring to what happened on January 22nd and 23rd?

A.  Yeah.

(Cochrane: Tr. 30.)

(Cochrane: Tr. 62-63.)  Based on a Discovery Health channel program she had seen, Cochrane believed "that [her] body was working on shock alone" and she "would bleed to death" if anyone touched her.  (Cochrane: Tr. 135, 150-51.)

When Cochrane arrived at the hospital, she was "scared," "nervous" and bleeding "copiously" from her neck wound. (Cochrane: Tr. 64-65, 140; Jordan: Tr. 192-93, 201; Mochson: Tr. 236.) Hospital social worker Pamela Wade Jordan assisted Cochrane in the emergency room and observed that Cochrane's fear was so intense that she "wouldn't stop for a wheelchair" and refused to remove her hand from her neck.  (Jordan: Tr. 188, 192-93; Mochson: Tr. 235.)  Cochrane's emergency room physician, Dr. Craig Mochson, observed Cochrane "writhing around and fighting with people, pushing them away." (Mochson: Tr. 243.)  Jordan opined that Cochrane's resistance to medical treatment was not surprising in light of her "very scared, very nervous" condition.  (Jordan: Tr. 192, 203-04.)  Dr. Mochson concurred that it was "relatively reasonable [for Cochrane] to be scared, defensive [and] unwilling to cooperate" with hospital personnel.  (Mochson: Tr. 260-61.)

When Jordan asked Cochrane what had happened to her, Cochrane replied that "Michael Johnson stabbed" her at his mother's house.  (Cochrane: Tr. 140-41; Jordan: Tr. 192, 195-200.)[12]  Cochrane also told Dr. Mochson that her "boyfriend" stabbed her with a "knife." (Mochson:

---

[12]     Jordan testified that she was "trying to ask questions fast because [Cochrane] was not steady on her feet." (Jordan: Tr. 201.)  When Cochrane responded, her answers were "not in order," and Jordan had to "keep" "ask[ing] her over again."  (Jordan: Tr. 201.)

Tr. 236.)  Nonetheless, the operative report indicated that Cochrane was stabbed by an "unknown person."[13] (Mochson: Tr. 256.) .

Emergency room staff evaluated Cochrane after the combined effects of blood loss and a sedative pill made her more cooperative.  (Mochson: Tr. 237, 243.)  Given that the neck wound was "gushing" blood, which evidenced a severe injury, the surgical team took Cochrane directly to the operating room.  (Mochson: Tr. 245.)[14]  Surgery revealed that the stabbing pierced Cochrane's external and internal jugular vein.  (Mochson: Tr. 246.)  The surgeons successfully repaired the damage to Cochrane's jugular veins and sutured the "large laceration on [Cochrane's] shoulder." (Mochson: Tr. 246, 251.)  Dr. Mochson opined that, without medical treatment, Cochrane's injuries would have been fatal.  (Mochson: Tr. 254.)  Dr. Mochson also noted that Cochrane's wounds were "consistent with being stabbed with a knife" because they were three centimeters in diameter, went "down deep enough to go through both the external jugular and internal jugular" veins and created "straight," "clean cut[s]" rather than jagged tears.  (Mochson: Tr. 252-53.)  At the time of trial, Cochrane had scars on her neck from the attack and experienced persistent numbness in her neck. (Cochrane: Tr. 77-78.)

_____

[13]    Dr. Mochson opined, however, that because an operative note records "what's happening in the operating room," it "is not really the appropriate place to start who did what."  (Mochson: Tr. 257.)  Therefore, Dr. Mochson was "not particularly" surprised that Johnson's name was omitted from the hospital records.  (Mochson: Tr. 262.)

[14]    The hospital also performed a urine toxicology on Cochrane, the results of which were positive for marijuana and cocaine.  (Mochson: Tr. 255.)

**Defense Counsel's Objections and Mistrial Applications During Cochrane's Testimony**

During trial, Cochrane made three references to Johnson hitting her and one reference to Johnson purchasing drugs.

The first reference occurred when the prosecutor asked Cochrane whether "there came a time when [her] relationship [with Johnson] ended?" (Cochrane: Tr. 29.)  Cochrane responded that their relationship "[o]fficially" ended "before the new year, 2007.  [Johnson] hit me."  (Cochrane: Tr. 29.)  Defense counsel did not object because he "didn't hear" Cochrane's remark.  (Tr: 180; see page 4 n.1 above.)  Justice Dawson later struck the "gratuitous remark" from the record because it was "inconsistent" with the pre-trial Molineux ruling.  (Tr. 181.)

After Cochrane stated that Johnson "hit" her, the prosecution asked Cochrane if she "reconnected" with Johnson.  (Cochrane: Tr. 29-30.)  Cochrane responded: "I didn't see [Johnson].  From that day I didn't see him before the new year because like I said, he had hit me."  (Cochrane: Tr. 31-32.)  Justice Dawson sustained defense counsel's objection and advised the jury: "when I sustain an objection you must disregard any answer if one has been given.  And it's stricken from the record, so don't consider it."  (Tr. 32.)

The prosecution asked Cochrane whether anyone attempted to "make [Johnson] leave" the crack house on January 23, 2007.  (Cochrane: Tr. 40.)  Cochrane replied: "[n]ope because he was buying crack and he was giv[ing] it to them."  (Cochrane: Tr. 40.)  Defense counsel objected and stated, outside the jury's presence:

> [Cochrane's comment about Johnson] being at that Selwyn location to buy crack was . . . interjected . . . solely to try to bring [Johnson] down to [Cochrane's] low

> level.  There is no drug charge whatsoever in the indictment.  In addition, Your
> Honor . . . the very essence of th[e] relationship [between Johnson and Cochrane]
> was that [Johnson] had walked away from crack years before and he was trying to
> turn [Cochrane's] life around.  For [Cochrane] to now in effect try to present the
> opposite picture that . . . they were fellow crack addicts is inflammatory to the point
> where I believe we need a mistrial.

(Tr. 42.)

Justice Dawson responded that Johnson's alleged crack sale was an "uncharged crime" and defense counsel was "entitled to a <u>Ventimiglia</u> Hearing and notice that [the prosecution] were going to elicit from the witness that the defendant was going to buy crack."  (Tr. 44.)   The prosecutor replied that she "was not expecting [Cochrane] to respond to [her] question that way." (Tr. 44.)  Justice Dawson denied the "extreme and drastic remedy" of a mistrial but offered to give the following curative instruction:

> [F]irst the testimony is stricken.  I was not going to repeat the exact remarks.  What
> I was going to say is first of all [that Cochrane] is not competent to testify why
> someone else would have made the defendant leave or not leave.  In other words, she
> can't testify as to why someone else did or did not do something, and second, . . . the
> defendant is not charged with possessing any illegal drugs and you are to disregard
> any claims by this witness that [Johnson] possessed any such substance.

(Tr. 48-49.)  Defense counsel declined Justice Dawson's curative instruction, fearing that it would "magnify" Cochrane's statements for the jury. (Tr. 48-49.)  Pursuant to defense counsel's request (Tr. 50), Justice Dawson warned Cochrane outside the presence of the jury that if she continued "making allegations that are not called for by the questions, we may have to end this trial and start all over again." (Tr. 53.)

_____Despite Justice Dawson's admonishment, Cochrane mentioned Johnson's alleged

December 2006 assault for a third time during cross-examination:

>Q.  Did you  - - just now, did you make reference to his, Michael Johnson, his giving you money on January 22nd?
>
>A.  No, I was meaning the day I bumped into him for the first time after not seeing him for most of January.
>
>Q.  Okay.  So you're saying that - - let me back up then.  We agreed approximately Christmas week you meet him again, he takes you in, he buys you the garments?
>
>A.  No.
>
>Q.  What?
>
>A.  That is when we had the <u>first incident when he hit me, right before the new year</u>.
>
> . . .
>
>[DEFENSE COUNSEL] BRUNO:  May we approach, Your Honor?
>
>THE COURT:  Okay.
>
>THE WITNESS:  Get it right.

(Cochrane: Tr. 91-92, emphasis added.)

Defense counsel accused Cochrane of  "arrogantly nodding [and] interloping . . . in [the] legal conversation" during the bench conference.  (Cochrane: Tr. 92.)  Justice Dawson issued a sua sponte instruction to the jury regarding Cochrane's gestures, reiterating his earlier reminder that "there will be bench conferences during this trial and you're to infer nothing from any gestures made during the bench conferences.  That includes any gestures made by any witness . . ."  (Tr. 93.)

Justice Dawson excused the jury and defense counsel made a second mistrial application:

> I'm now moving for a mistrial.  Your Honor, the earlier incident, in which you denied the mistrial, was bad enough.  Now, this witness is persisting in just voluntarily, and I believe at this point intentionally, bringing out uncharged crimes trying . . . to drag down my client to her extremely low level of society . . . .
>
> Between the [r]eference to my client buying and giving out crack and now this uncharged assault, I believe this jury is entirely too polluted and I believe we need a mistrial.

(Tr. 94-96.)

The prosecutor countered that defense counsel opened the door to Cochrane's statement (when he asked "what?") and Cochrane was "simply answering questions that [were] posed to her."  (Tr. 101, 103.)  The prosecutor also argued that Cochrane did not intentionally reference an uncharged crime, but instead was "sincere[ly] confus[ed]" and believed that defense counsel had asked when the relationship ended, not about Cochrane's and Johnson's January 20th meeting.  (Tr. 101-02.)

Justice Dawson found that defense counsel had not opened the door to Cochrane's comment but, nevertheless, declined to declare a mistrial.  (Tr. 103-06, 162-63, 179-80.)  Justice Dawson instead struck the testimony from the record outside the presence of the jury.  (Tr. 108-09, 179-81.)  Justice Dawson also asked defense counsel whether he wished to address "the gestures" made by Cochrane during the preceding bench conference.  (Tr. 97.)  Although defense counsel acknowledged that Cochrane was "making these grimaces which involve . . . contorting her lips, meaning listen to this foolishness,"  he declined any further curative instruction.  (Tr. 97.)  Calling

it a "nonissue," defense counsel said that Cochrane's gestures "made it even more clear to the jury" that Cochrane was a "lowlife" and an unreliable witness.  (Tr. 98.)

### The Defense Case at Trial

Johnson did not present any evidence at trial.  (Tr. 288.)[15]

### Jury Charge

In addition to instructing the jury on the fundamental legal principles (including burden of proof beyond a reasonable doubt) and the specific law applicable to each charge (Charge: Tr. 348-85), Justice Dawson instructed the jury that: "[w]hen you judge the facts, you are to consider only the evidence. The evidence in this case includes the testimony of the witnesses and the exhibits that were received in evidence.  Testimony which was stricken from the record or to which an objection was sustained must be disregarded by you." (Charge: Tr. 352.)  Neither the prosecution nor the defense made any objections, exceptions or requests after Justice Dawson completed the jury charge.  (Tr. 385-86.)

### Verdict and Sentence

On February 29, 2008, the jury found Johnson guilty of first degree assault, fourth degree criminal possession of a weapon, second degree aggravated harassment, attempted third degree assault and third degree menacing, but acquitted Johnson of second degree attempted murder. (Verdict: Tr. 416-18.)_____

---

[15]    At the close of the prosecution case and again at the close of the entire trial, defense counsel made a motion to dismiss, which Justice Dawson denied (except as to three of the four harassment counts).  (Tr. 265-67, 274-76, 290-91.)

On March 26, 2008, Johnson was sentenced, as a second-felony offender, to twelve and one-half years imprisonment.  (Dkt. No. 7: Sentencing Transcript 3, 11.)

**Johnson's Direct Appeal**

Represented by new counsel (Jonathan Kirshbaum of the Center for Appellate Litigation), Johnson appealed to the First Department, claiming that:  (1) "[t]he verdict was against the weight of the evidence" (Dkt. No. 5: Killian Aff. Ex. 1: Johnson 1st Dep't Br. at 23-35); and (2) Cochrane's testimony that Johnson previously assaulted her and bought crack cocaine violated Justice Dawson's pretrial Molineux ruling.  (Johnson 1st Dep't Br. 36-49).

On November 19, 2009, the First Department unanimously affirmed Johnson's conviction, holding in full:

> The verdict was not against the weight of the evidence.  Moreover, we find the evidence to be overwhelming.  There is no basis for disturbing the jury's determinations concerning credibility.  Notwithstanding the victim's drug and alcohol abuse, she provided credible testimony that it was defendant, her former boyfriend, who caused her injuries.  The evidence, including the fact that the injuries consisted of a severed jugular vein and a separate stab wound to the arm, completely refuted any hypothesis that she accidentally stabbed herself.  We do not find anything particularly significant about the fact that she may have used the word accident to mean incident.
>
> The court properly exercised its discretion in denying defendant's mistrial motions, made when, at several junctures in her testimony, the victim volunteered uncharged crimes evidence that was not responsive to questions.  The drastic remedy of a mistrial was not warranted, because the curative actions that were either provided by the court, or offered by the court but rejected by defendant, were sufficient to prevent defendant from being prejudiced.

People v. Johnson, 67 A.D.3d 560, 560, 888 N.Y.S.2d 506, 506-07 (1st Dep't 2009) (citations omitted).

On March 1, 2010, the New York Court of Appeals denied leave to appeal.  <u>People</u> v. <u>Johnson</u>, 14 N.Y.3d 802, 899 N.Y.S.2d 136 (2010).

**Johnson's Federal Habeas Corpus Petition**

Johnson's pro se habeas corpus petition asserts that:  (1) "the verdict was against the weight of [the e]vidence" (Dkt. No. 2: Pet. ¶ 12(1)) and (2) the complainant's testimony that Johnson previously assaulted her, which violated Justice Dawson's <u>Molineux</u> ruling, and her testimony that Johnson had bought crack cocaine, "deprived [Johnson] of his due process right to a fair trial" (Pet. ¶ 12(2)).

## <u>ANALYSIS</u>

## I.    <u>THE AEDPA REVIEW STANDARD</u>

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners."  <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[16]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[17]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[18]  "That federal law, as defined by the

---

[16]    See also, e.g., Knowles v. Mirzayance, 129 S. Ct. 1411, 1418 (2009); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[17]    Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[18]    Accord, e.g., Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160, 164 (2d Cir.), cert. denied, 130 S. Ct. 642, (2009); Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the
(continued...)

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42; accord, e.g., Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S. Ct. 1312 (2009). "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:

> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[19]

---

[18]   (...continued)
dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Hargett v. Giambruno, 291 Fed. Appx. 402, 403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

[19]   Accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court.") (quotation omitted); Brown v. Payton, 544 U.S. 133,
(continued...)

In <u>Williams,</u> the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u> v. <u>Taylor,</u> 529 U.S. at 413, 120 S. Ct. at 1523.[20] However, "[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor,</u> 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id.</u>[21] Rather, the issue is "whether the state court's

---

[19]      (...continued)
125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone,</u> 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent,</u> 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade,</u> 123 S. Ct. at 1173-74; <u>Bierenbaum</u> v. <u>Graham,</u> 607 F.3d 36, 47-48 (2d Cir. 2010); <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.,</u> 586 F.3d 149, 156 (2d Cir. 2009); <u>Dunlap</u> v. <u>Burge,</u> 583 F.3d at 164; <u>Davis</u> v. <u>Grant,</u> 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello,</u> 460 F.3d 238, 242 (2d Cir. 2006), <u>cert. denied,</u> 549 U.S. 1215, 127 S. Ct. 1267 (2007); <u>Henry</u> v. <u>Poole,</u> 409 F.3d at 68; <u>Howard</u> v. <u>Walker,</u> 406 F.3d at 122; <u>Rosa</u> v. <u>McCray,</u> 396 F.3d 210, 219 (2d Cir.), <u>cert. denied,</u> 546 U.S. 889, 126 S. Ct. 215 (2005); <u>Tueros</u> v. <u>Greiner,</u> 343 F.3d at 591; <u>DelValle</u> v. <u>Armstrong,</u> 306 F.3d at 1200; <u>Yung</u> v. <u>Walker,</u> 341 F.3d at 109; <u>Kennaugh</u> v. <u>Miller,</u> 289 F.3d at 42; <u>Loliscio</u> v. <u>Goord,</u> 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner,</u> 228 F.3d at 127-28.

[20]      <u>Accord, e.g.,</u> <u>Wadddington</u> v. <u>Sarausad,</u> 129 S. Ct. 823, 831 (2009); <u>Brown</u> v. <u>Payton,</u> 544 U.S. at 141, 125 S. Ct. at 1439; <u>Wiggins</u> v. <u>Smith,</u> 539 U.S. at 520, 123 S. Ct. at 2534-35; <u>Bierenbaum</u> v. <u>Graham,</u> 607 F.3d at 48; <u>Brisco</u> v. <u>Ercole,</u> 565 F.3d 80, 87 (2d Cir.), <u>cert. denied,</u> 130 S. Ct. 739 (2009); <u>Jones</u> v. <u>West,</u> 555 F.3d 90, 96 (2d Cir. 2009); <u>Davis</u> v. <u>Grant,</u> 532 F.3d at 140; <u>Lynn</u> v. <u>Bliden,</u> 443 F.3d 238, 246 (2d Cir. 2006), <u>cert. denied,</u> 549 U.S. 1257, 127 S. Ct. 1383 (2007); <u>Howard</u> v. <u>Walker,</u> 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner,</u> 337 F.3d at 181.

[21]      <u>See also, e.g.,</u> <u>Renico</u> v. <u>Lett,</u> 130 S. Ct. 1855, 1862 (May 3, 2010); <u>Wadddington</u> v. <u>Sarausad,</u> 129 S. Ct. at 831; <u>Yarborough</u> v. <u>Alvarado,</u> 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith,</u> 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent,</u> 538 U.S. at 641, 123
(continued...)

application of clearly established federal law was objectively unreasonable."  Williams v. Taylor,

529 U.S. at 409, 120 S. Ct. at 1521.[22/]  "Objectively unreasonable" is different from "clear error."

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness.").  This is a

"substantially higher threshold" than incorrectness.  Renico v. Lett, 130 S. Ct. at 1862; accord, e.g.,

---

[21/]      (...continued)
S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ
simply because that court concludes that the state-court decision applied [a Supreme Court
case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360
(2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Dunlap v. Burge, 583 F.3d
at 165-66 (A "federal court might agree with a petitioner that the relevant federal law should
have been interpreted differently than the way it was interpreted by the state court yet still
conclude that the state court's application of federal law was not unreasonable."); Brisco v.
Ercole, 565 F.3d at 87-88; Jones v. West, 555 F.3d at 96; Davis v. Grant, 532 F.3d at 140;
Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409
F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v.
Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong,
306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was
not an unreasonable application of, or contrary to, clearly established federal law as defined
by Section 2254(d), we may not grant habeas relief even if in our judgment its application
was erroneous.").

[22/]      Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct.
at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti,
537 U.S. at 25-27, 123 S. Ct. at 360-61; Dunlap v. Burge, 583 F.3d at 165; Davis v. Grant,
532 F.3d at 140; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 552
U.S. 836, 128 S. Ct. 75 (2007); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443
F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v.
Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231,
245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

Knowles v. Mirzayance, 129 S. Ct. at 1420.[23/]   "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule."   Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[24/]   "Even if the state court issues a decision 'contrary to' clearly established Supreme Court law, . . . a petitioner 'cannot obtain relief . . . unless application of a *correct* interpretation of that

---

[23/]   However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).; accord, e.g., Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the "unreasonable application 'standard falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[24/]   The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Renico v. Lett, 130 S. Ct. at 1864; Knowles v. Mirzayance, 129 S. Ct. at 1426 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d at 157; Dunlap v. Burge, 583 F.3d at 166; Hawkins v. Costello, 460 F.3d at 243.

[Supreme Court] decision leads to the conclusion that his rights were violated.'" Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir.), cert. denied, 128 S. Ct. 2910 (2008).

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[25/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Renico v. Lett, 130 S. Ct. at 1858 ("AEDPA thus imposes a 'highly deferential standard for evaluating state court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'") (citations omitted); Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519. "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to the record in an unreasonable manner." Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Georgison v. Donelli, 588 F.3d at 154.

---

[25/]    Accord, e.g., Bierenbaum v. Graham, 607 F.3d at 47-48; Davis v. Grant, 532 F.3d at 140-41; Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Wilson v. Mazzuca, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'").[26/]  Even if the federal court holds an evidentiary hearing, the deferential AEDPA

---

[26/]    See also, e.g., Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "if any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (continued...)

review standard applies.  <u>Wilson</u> v. <u>Mazzuca</u>, 570 F.3d at 501-02 ("Where . . . a district court has performed additional fact finding, the court must then ask whether the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' . . . in light of any newly-discovered facts. . . . [W]e are directed to apply the same AEDPA standard that would otherwise be in force, now in light of the new information that has been obtained through a § 2254(e) hearing.").

Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in <u>Jimenez</u> v. <u>Walker</u>, 458 F.3d 130, 145-46 (2d Cir. 2006), <u>cert. denied</u>, 549 U.S. 1133, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in <u>Coleman</u>, <u>Quirama</u> and <u>Sellan</u>" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." <u>Jimenez</u> v. <u>Walker</u>, 458 F.3d at 145 & n.16; <u>accord</u>, <u>e.g.</u>, <u>Clark</u> v. <u>Perez</u>, 510 F.3d 382, 394 (2d Cir.), <u>cert. denied</u>, 129 S. Ct. 130 (2008).  Using these three factors, the court should classify the decision as either:

> (1)     fairly appearing to rest primarily on federal law or to be interwoven with federal law or
>
> (2)     fairly appearing to rest primarily on state procedural law.

---

<u>26</u>/     (...continued)
(2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), <u>cert. denied</u>, 543 U.S. 872, 125 S. Ct. 110 (2004); <u>Jenkins</u> v. <u>Artuz</u>, 294 F.3d 284, 291 (2d Cir. 2002) ("In <u>Sellan</u>, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").

Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim. Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d). The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar. Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar. No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.

The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised. The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello, 460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits."). Of course, "[i]f there is no [state court] adjudication on the merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies." Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Wilson v. Mazzuca, 570 F.3d at 500 n.8; Jimenez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue

made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g.,

Bierenbaum v. Graham, 2010 WL 2036951 at *9; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v.

McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of

correctness by clear and convincing evidence.'"  Parsad v. Greiner, 337 F.3d at 181 (quoting

§ 2254(e)(1)); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination

of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing

evidence."); Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

## II.    JOHNSON'S WEIGHT OF THE EVIDENCE CLAIM

### A.    Johnson's Weight of the Evidence Claim is not Cognizable on Habeas Review

A challenge to a verdict based on the weight of the evidence differs from one based

on the sufficiency of the evidence:  "'[T]he "weight of the evidence" argument is a pure state law

claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim

is based on federal due process principles.'"  Woullard v. Phillips, 04 Civ. 2225, 2007 WL 1958971

at *7 (S.D.N.Y. July 6, 2007) (quoting Garbez v. Greiner, 01 Civ. 9865, 2002 WL 1760960 at *8

(S.D.N.Y. July 30, 2002) (citing People v. Bleakley, 69 N.Y.2d 490, 515 N.Y.S.2d 761 (1987))),

report & rec. adopted, 2007 WL 2542433 (S.D.N.Y. Sept. 6, 2007).[27]

---

[27]    The New York Court of Appeals in Bleakley explained the difference as follows:

> Although the two standards of intermediate appellate review – legal
> sufficiency and weight of evidence – are related, each requires a discrete analysis.
> For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the
> court must determine whether there is any valid line of reasoning and permissible
> (continued...)

It is well-settled that a weight of the evidence claim is not cognizable on federal habeas review.  E.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 355 Fed. Appx. 469, 475 (2d Cir. 2009) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . ."), cert. denied, 476 U.S. 1123, 106 S. Ct. 1991 (1986); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255, 44 S. Ct. 103 (1923); Flores v. Ercole, No. 06-CV-6751, 2010 WL 1329036 at *8 (E.D.N.Y.  Mar. 31, 2010); Torres v. Fisher, No. 06-CV-6579, 2010 WL 1338088 at *4 (S.D.N.Y. Mar. 31, 2010); Hyatt v. Bellnier, 09 Civ. 6594, 2009 WL 3423359 at *10 & n.22 (S.D.N.Y. Oct. 23, 2009) (Peck, M.J.) (&

---

27/      (...continued)
inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged.  If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.

To determine whether a verdict is supported by the weight of the evidence, however, the appellate court's dispositive analysis is not limited to that legal test. Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further.  If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony."

People v. Bleakley, 69 N.Y.2d at 495, 515 N.Y.S.2d at 763 (citations omitted).

cases cited therein); Woullard v. Phillips, 2007 WL 1958971 at *7; Nelson v. Sears, 05 Civ. 10341, 2006 WL 775123 at *8-9 (S.D.N.Y. Mar. 28, 2006); Rodriguez v. Senkowski, 03 Civ. 3314, 2004 WL 503451 at *26-27 & n.33 (S.D.N.Y. Mar. 15, 2004) (Peck, M.J.) (& cases cited therein); Garbez v. Greiner, 2002 WL 1760960 at *8 ("by raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."); Lemons v. Parrott, 01 Civ. 9366, 2002 WL 850028 at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim."); McBride v. Senkowski, 98 Civ. 8663, 2002 WL 523275 at *4 n.2 (S.D.N.Y. Apr. 8, 2002) (weight of evidence is not cognizable on habeas review).[28/]

---

[28/]    See also, e.g., Guillen v. Powers, No. 07 CV 5348, 2009 WL 1106936 at *6 (E.D.N.Y. Apr. 23, 2009); Venable v. Walsh, No. 05-CV-84, 2009 WL 750230 at *9 (E.D.N.Y. Mar. 19, 2009); Guerrero v. Tracey, 425 F. Supp. 2d 434, 447 (S.D.N.Y. 2006); Feliz v. Conway, 378 F. Supp. 2d 425, 430 n.3 (S.D.N.Y. 2005); Glisson v. Mantello, 287 F. Supp. 2d 414, 441 (S.D.N.Y. 2003); Pitter v. Fischer, 234 F. Supp. 2d 342, 349 n.6 (S.D.N.Y. 2002); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. Accordingly, the Court is precluded from considering the [weight of the evidence] claim.") (citations omitted); Peralta v. Bintz, 00 Civ. 8935, 2001 WL 800071 at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his petition must be denied."); Kearse v. Artuz, 99 Civ. 2428, 2000 WL 1253205 at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief."); Rodriguez v. O'Keefe, 96 Civ. 2094, 1996 WL 428164 at *4 (S.D.N.Y. July 31, 1996) ("A claim that the verdict was against the weight of the evidence is not cognizable on habeas review."), aff'd, No. 96-2699, 122 F.3d 1057 (table) (2d Cir. Sept. 9, 1997), cert. denied, 522 U.S. 1123, 118 S. Ct. 1068 (1998); cf., Maldonado v.
(continued...)

**B.      To the Extent Johnson's Pro Se Petition Can Be Deemed to Raise a Sufficiency of the Evidence Claim, It Is Meritless**

To the extent this Court liberally construes Johnson's pro se habeas weight of the evidence claim as also raising a sufficiency of the evidence claim, such claim lacks merit.

"'[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979) (quoting In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)).  However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. at 317, 99 S. Ct. at 2788.  Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 – if the settled procedural prerequisites for such a claim have otherwise been satisfied – the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. at 324, 99 S. Ct. at 2791-92.[29]

---

[28]    (...continued)
Scully, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim; "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues").

[29]    Accord, e.g., Henry v. Ricks, 578 F.3d 134, 137 (2d Cir. 2009); United States v. Ibanez, 328 Fed. Appx. 673, 675 (2d Cir.), cert. denied, 130 S. Ct. 303 (2009); United States v. Hassan, 578 F.3d 108, 122 (2d Cir. 2008); United States v. Quattrone, 441 F.3d 153, 169 (2d Cir. 2006); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000); Einaugler v.
(continued...)

The petitioner bears a very heavy burden:

> [T]he standard for appellate review of an insufficiency claim placed a  "very heavy burden" on the appellant.  Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt.  In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

United States v. Carson, 702 F.2d 351, 361 (2d Cir.) (citations omitted), cert. denied, 462 U.S. 1108, 103 S. Ct. 2456, 2457 (1983).[30]

The habeas court's review of the jury's findings is limited:

---

[29]  (...continued)
Supreme Court, 109 F.3d 836, 839 (2d Cir. 1997).

[30]  Accord, e.g., United States v. Ivezaj, 336 Fed. Appx. 6, 9 (2d Cir. 2009), cert. denied, 130 S. Ct. 1749 (2010); Flowers v. Fisher, 296 Fed. Appx. 208, 210 (2d Cir. 2008); United States v. Triumph Capital Grp. Inc., 544 F.3d 149, 158 (2d Cir. 2008); United States v. Iodice, 525 F.3d 179, 182 (2d Cir. 2008); United States v. Hassan, 578 F.3d at 122; United States v. Quattrone, 441 F.3d at 169; Fama v. Comm'r of Corr. Servs., 235 F.3d at 811 ("petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence"); United States v. Middlemiss, 217 F.3d 112, 117 (2d Cir. 2000); United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) ("a defendant shoulders a 'heavy burden' in challenging the sufficiency of evidence supporting a conviction"); United States v. Kinney, 211 F.3d 13, 16 (2d Cir. 2000), cert. denied, 531 U.S. 1079, 121 S. Ct. 778 (2001); United States v. Bicaksiz, 194 F.3d 390, 398 (2d Cir. 1999) (The defendant "bears a 'very heavy burden' in challenging the sufficiency of the evidence that led to his conviction.  In considering any such challenge, we view all proof in the light most favorable to the government and draw all reasonable inferences in the government's favor.") (citations omitted), cert. denied, 528 U.S. 1161, 120 S. Ct. 1175 (2000); United States v. Russo, 74 F.3d 1383, 1395 (2d Cir.), cert. denied, 519 U.S. 927, 117 S. Ct. 293 (1996); United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993) ("[T]he defendant who makes a sufficiency challenge bears a heavy burden."), cert. denied, 511 U.S. 1042, 1096, 114 S. Ct. 1565, 1864 (1994); United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993) (burden on defendant claiming insufficiency is "very heavy" and all inferences must be drawn in the government's favor).

> [T]his inquiry does not require a court to "ask itself whether <u>it</u> believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

<u>Jackson</u> v. <u>Virginia</u>, 443 U.S. at 318-19, 99 S. Ct. at 2789 (citations omitted).[31/]

The <u>Jackson</u> v. <u>Virginia</u> "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. at 324 n.16, 99 S. Ct. at 2792 n.16; <u>accord</u>, <u>e.g.</u>, <u>Henry</u> v. <u>Ricks</u>, 578 F.3d at 137-38; <u>Flowers</u> v. <u>Fisher</u>, 296 Fed. Appx. at 210; <u>Haims</u> v. <u>Senkowski</u>, 114 Fed. Appx. 16, 18 (2d Cir. 2004), <u>cert. denied</u>, 546 U.S. 839, 126 S. Ct. 76 (2005); <u>Fama</u> v. <u>Comm'r of Corr. Servs.</u>, 235 F.3d at 811 ("When it considers the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'"); <u>Green</u> v. <u>Abrams</u>, 984 F.2d 41, 44-45 (2d Cir. 1993) ("In considering a petition for a writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime.").

---

[31/]    <u>Accord</u>, <u>e.g.</u>, <u>United States</u> v. <u>Farmer</u>, 583 F.3d 131, 140 (2d Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 2365 (2010); <u>Quinones</u> v. <u>Ercole</u>, 310 Fed. Appx. 434, 436 (2d Cir. 2009); <u>United States</u> v. <u>Thompson</u>, 528 F.3d 110, 118 (2d Cir.), <u>cert. denied</u>, 129 S. Ct. 218 (2008); <u>United States</u> v. <u>Iodice</u>  525 F.3d at 179; <u>United States</u> v. <u>Middlemiss</u>, 217 F.3d at 117; <u>United States</u> v. <u>Kinney</u>, 211 F.3d at 16; <u>United States</u> v. <u>Russo</u>, 74 F.3d at 1395 (quoting <u>United States</u> v. <u>Martinez</u>, 54 F.3d 1040, 1042-43 (2d Cir.), <u>cert. denied</u>, 516 U.S. 1001, 116 S. Ct. 545 (1995)); <u>Mallette</u> v. <u>Scully</u>, 752 F.2d 26, 31 (2d Cir. 1984).

Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Johnson committed first degree assault. Penal Law § 120.10(1) provides:

> A person is guilty of assault in the first degree when:
>
>    1.  With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . .

Cochrane's testimony, if believed by the jury, established all of the elements of first degree assault. Cochrane's testimony that Johnson threatened to kill her (see pages 5, 7 above) is sufficient to prove the element of "intent to cause serious physical injury." Cochrane's testimony (see pages 7-10 above), supported by that of Dr. Mochson (see page 11 above), established that Johnson used a deadly weapon, a knife, to injure Cochrane. And both Dr. Mochson's and Cochrane's testimony established that Johnson caused serious physical injury to Cochrane. (See pages 7-11 above.) Thus, if the jury believed Cochrane, as it clearly did, the evidence was sufficient.[32/]

Johnson's First Department brief conceded (at least implicitly) that the elements of all the crimes of which Johnson was convicted were met. (Dkt. No. 5: Killian Aff. Ex. 1: Johnson 1st Dep't Br. at 24: "Weight of the evidence review requires that, even if all the legal elements and factual findings are supported by some credible evidence, this Court must examine the evidence further.") (emphasis added). Johnson's First Department brief instead argued that "Cochrane was

---

[32/]   Cochrane's testimony similarly established the elements of the lesser charges that Johnson was found guilty of.

an inherently unreliable witness," and "[t]he most reasonable inference to draw here was that this was not an assault, but an 'accident,' which was how Cochrane herself described the incident." (Johnson 1st Dep't Br. at 25; see also id. at 25-35.)

The law is well established that questions of witness credibility are jury questions and a federal habeas court may not reassess the jury's finding of credibility: "'[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.'" Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (Peck, M.J.) (quoting Anderson v. Senkowski, No. CV-92-1007, 1992 WL 225576 at *3 (E.D.N.Y. Sept. 3, 1992), aff'd mem., 992 F.2d 320 (2d Cir.1993)).[33]

---

[33]     See also, e.g., Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) ("Although appellants emphasize the lack of physical evidence connecting them to the murder and contend that the testifying witnesses were not credible, 'a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility.'"), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Martin v. Brown, No. 08-CV-0316, 2010 WL 1740432 at *9 (E.D.N.Y. Apr. 29, 2010) ("It is well established that a habeas court may neither 'disturb the jury's findings with respect to the witnesses' credibility,' nor 'make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony.'") (citation omitted); Cruz v. Ercole, 07 Civ. 9868, 2010 WL 245038 at *8 (S.D.N.Y. Jan. 20, 2010); Guity v. Ercole, 07 Civ. 0728, 2007 WL 3284694 at *5 (S.D.N.Y. Nov. 6, 2007) ("This Court is unable to reassess the 'fact specific credibility judgments by juries or to weigh conflicting testimony [o]n collateral review[,]' and 'must presume that the jury resolved any questions of credibility in favor of the prosecution.'") (citation omitted); Murray v. Greene, 06 Civ. 3677, 2006 WL 3751294 at *12 (S.D.N.Y. Dec. 21, 2006); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *31-33 (S.D.N.Y. Jun. 10, 2005) (Peck, M.J.); Huber v. Schriver, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his
                                                                                        (continued...)

The jury heard Cochrane's testimony, defense counsel's cross-examination bringing out inconsistencies in her testimony, and defense counsel's closing argument (Tr. 294-314) attacking her credibility and suggesting the "accident" theory. The jury chose to believe Cochrane, and this Court cannot reverse the jury's conclusion.

The fact that Cochrane was the only witness to testify that Johnson stabbed her with a knife, and that there were inconsistencies in her testimony, does not change the result.[34] See, e.g.,

---

[33]   (...continued)
conviction. . . . However, under both the state law. . . and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury . . . . "); Carromero v. Strack, 98 Civ. 3519, 1998 WL 849321 at *5 (S.D.N.Y. Nov. 19, 1998) (Peck, M.J.) (evidence sufficient where jury credited prosecution witnesses' testimony "despite some inconsistencies between their trial testimony and prior statements to the police and to the grand jury"); Davis v. Senkowski, No. 97-CV-2328, 1998 WL 812653 at *5 (E.D.N.Y. Aug. 6, 1998) ("The jury here chose to believe [the prosecution witness]'s testimony despite any inconsistencies in the evidence, and I will not reassess that decision."); Williams v. Bennet, 97 Civ. 1628, 1998 WL 236222 at *5 (S.D.N.Y. Apr. 20, 1998) ("Williams relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury. These inconsistencies were placed before the jury by the defense, which made them a central focus of its case. The jury's decision to credit [the victim]'s testimony, despite its inconsistencies, over Williams' testimony, is fully supported by the record."); Taxiarhopoulos v. Spence, No. CV 92-0790, 1992 WL 403112 at *4 (E.D.N.Y. Dec. 28, 1992) (The petitioner "cannot show that the evidence was insufficient to support conviction. For example, he challenges the credibility of the main prosecution witness . . ., pointing to alleged inconsistencies in his testimony. This, however, was an argument made to, and properly resolved by, the trial jury."); Fagon v. Bara, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony").

[34]   Moreover, Cochrane's testimony was corroborated by other witnesses in important respects. Dr. Mochson and hospital social worker Jordan both corroborated Cochrane's testimony about the life-threatening injury she sustained. (See pages 10-11 above.) Carson
(continued...)

United States v. Ware, 577 F.3d 442, 447 (2d Cir. 2009) ("Where there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses. 'The assessment of witness credibility lies solely within the province of the jury, and the jury is free to believe part and disbelieve part of any witness's testimony . . . .'") (citations omitted); United States v. Josephberg, 562 F.3d 478, 487 (2d Cir.) (same), cert. denied, 130 S. Ct. 397 (2009); United States v. Frampton, 382 F.3d 213, 222 (2d Cir.) ("'[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction.'"), cert. denied, 543 U.S. 1037, 125 S. Ct. 815 (2004); Edwards v. Jones, 720 F.2d 751, 755 (2d Cir. 1983) ("[T]his was 'not a case in which the sole witness was uncertain of his identification . . . [n]or is it one of testimony incredible as a matter of law.'"); Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficiency claim, holding that jury was entitled to believe prosecution witnesses despite inconsistencies in their testimony); United States v. Danzey, 594 F.2d 905, 916 (2d Cir.), cert. denied, 441 U.S. 951, 99 S. Ct. 2179 (1979) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."); Cox v. Herbert, 420 F. Supp. 2d 144, 162 (W.D.N.Y. 2006) (Complainant's "testimony alone would have been sufficient, even without the corroborating witnesses" to establish that defendant had shot her.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *16 (S.D.N.Y.

---

[34]/   (...continued)
corroborated Cochrane's physical altercation with Johnson, albeit he did not see a knife. (See page 8 n.10 above.)  The defense thus could not raise a misidentification defense or claim that Cochrane was not hurt – hence, the defense theory that Cochrane was accidentally cut when she fell on broken glass or was cut by her own knife during the struggle. (Johnson 1st Dep't Br. at 25, 34-35; Tr. 302-05.)  The jury obviously rejected this alternative theory.

Dec. 6, 2005) (Peck, M.J.) (testimony of single witness sufficient), report & rec. adopted, 2006 WL 2689889 (S.D.N.Y. Sept. 19, 2006); Means v. Barkley, 98 Civ. 7603, 2000 WL 5020 at *4 (S.D.N.Y. Jan. 4, 2000) ("The testimony of a single uncorroborated witness is sufficient to achieve a showing of guilt beyond a reasonable doubt, even if that witness's testimony is less than entirely consistent. . . . The alleged inconsistencies in Mendez's description of Means's earring and facial hair are insufficient to undermine Mendez's testimony.") (citations omitted); see also cases cited at page 35 n.33.

The police department's failure to recover the knife does not make the evidence insufficient, since there is no requirement under New York law that the weapon or dangerous instrument be recovered or introduced into evidence at trial.  See, e.g., Ledesma v. Cunningham, 03 Civ. 6322, 2004 WL 1775677 at *12 (S.D.N.Y. Aug. 10, 2004) (Habeas corpus petition alleging insufficiency of the evidence was denied because even though "no weapon or dangerous instrument was ever offered in evidence," "'the testimony of a single, uncorroborated eyewitness is generally sufficient.'"), report & rec. adopted, 2004 WL 2319326 (S.D.N.Y. Oct. 14, 2004); People v. Gragnano, 63 A.D.3d 1437, 1440, 885 N.Y.S.2d 369, 372 (3d Dep't 2009) ("[T]he evidence adduced at trial sufficiently established [assault and criminal possession of a weapon] notwithstanding the fact that the witnesses never saw the weapon and police were not able to recover it."), appeal denied, 13 N.Y.3d  939, 895 N.Y.S.2d 329 (2010); People v. Winter, 51 A.D. 3d 599, 600, 858 N.Y.S.2d 166, 167 (1st Dep't) ("Although no witness saw defendant holding a sharp object, the evidence supports the conclusion that it was defendant who cut the victim."), appeal denied, 10 N.Y.3d 966,

863 N.Y.S.2d 150 (2008); People v. Brown, 52 A.D.3d 1237, 1238, 859 N.Y.S.2d 548, 548 (4th

Dep't) ("The nature of the victim's wounds supports the inference that defendant used a sharp,

dangerous instrument to inflict the victim's injuries and that the victim could not have sustained

those wounds in the manner suggested by defendant at trial."), appeal denied, 10 N.Y.3d 956, 836

N.Y.S.2d 140 (2008); People v. Prior, 23 A.D.3d 1076, 1076, 804 N.Y.S.2d 877, 878 (4th Dep't

2005) (The victim's two inch scar alone was legally sufficient to establish that defendant used a

dangerous instrument against her.), appeal denied, 6 N.Y.3d 817, 812 N.Y.S.2d 456 (2006).[35]

 A rational jury could have concluded that Johnson intended to cause serious physical

injury based on Cochrane's testimony about Johnson's threatening phone call immediately preceding

the incident and the life-threatening injury to Cochrane's neck.  (See pages 6-7, 10-11 above.)  See,

e.g., Coke v. Superintendent, Green Haven Corr. Facility, No. 06-CV-811, 2010 WL 475274 at *3

(W.D.N.Y. Feb. 5, 2010) (Evidence that petitioner hit victim with a belt, causing welt marks, bruises

and bleeding, was sufficient to prove beyond a reasonable doubt that petitioner intended to seriously

---

[35] See also, e.g., People v. Vincent, 231 A.D.2d 444, 445, 647 N.Y.S.2d 205, 205-06 (1st Dep't)
("[I]t was unnecessary for the police to recover the weapon in order to prove [defendant's]
guilt beyond a reasonable doubt."), appeal denied, 89 N.Y.2d 931, 654 N.Y.S.2d 733 (1996);
People v. Burgos, 186 A.D.2d 396, 397, 588 N.Y.S.2d 190, 190 (1st Dep't 1992)
("[C]omplainant's testimony regarding a knife was sufficient to establish the threatened use
of a dangerous instrument."), appeal denied, 81 N.Y.2d 837, 595 N.Y.S.2d 736 (1993);
People v. Jacobs, 137 A.D.2d 834, 834-35, 525 N.Y.S.2d 297, 298 (2d Dep't 1988)
(Possession of a dangerous instrument at the time of the robbery was "established by legally
sufficient evidence" where "[t]he complainant testified that the defendant placed a razor to
his throat during the course of the robbery" even though the "complainant did not describe
the razor in detail."); People v. Azzara, 138 A.D.2d 495, 495, 525 N.Y.S.2d 890, 891 (2d
Dep't) ("[T]estimony of the complainant alone was sufficient" to demonstrate "that he
threatened her with a handgun."), appeal denied, 71 N.Y.2d 1023, 530 N.Y.S.2d 558 (1988).

injure victim.); People v. Abdul-Khaliq, 43 A.D.3d 700, 701, 841 N.Y.S.2d 551, 552 (1st Dep't)

("Defendant slashed his victim's face with a razor, causing an injury that required 31 stitches, and

his intent to cause serious physical injury could be readily inferred from his actions."), appeal denied,

9 N.Y.3d 989, 848 N.Y.S.2d 607 (2007); People v. Walker, 30 A.D.3d 215, 215, 816 N.Y.S.2d 466,

467 (1st Dep't) ("Defendant slashed his victim's face with a razor, and his intent to cause serious

physical injury could be readily inferred from his actions."), appeal denied, 7 N.Y.3d 796, 821

N.Y.S.2d 826 (2006).[36/]

   A rational jury also could have concluded that Cochrane sustained the serious

physical injuries required for first degree assault.  Serious physical injury is a "physical injury which

creates a substantial risk of death, or which causes death or serious and protracted disfigurement."

Penal Law § 10.00(10).  A rational jury could have concluded that Cochrane sustained serious

physical injuries based on Dr. Mochson's testimony that Cochrane sustained severe, near-fatal

wounds, Cochrane's extended hospital stay and the scars on Cochrane's neck at trial.  (See pages 10-

11 above.)  See, e.g., Horton v. Ercole, 557 F. Supp. 2d 308, 323 (N.D.N.Y. 2008) (Evidence that

the victim "underwent extensive surgery . . . , remained in the hospital for two weeks, and had a scar

---

[36/]  See also, e.g., People v. Rivers, 17 A.D.3d 934, 936, 793 N.Y.2d 627, 629 (3d Dep't), appeal
denied, 5 N.Y. 3d 768, 801 N.Y.S.2d 262 (2005); People v. Stoby, 4 A.D.3d 766, 766, 771
N.Y.S.2d 623, 625 (4th Dep't) ("'Intent may be inferred from defendant's conduct and the
surrounding circumstances.'"  "[E]vidence that the defendant swung a knife and stabbed the
victim in the back is legally sufficient to establish that he intended to cause serious physical
injury."), appeal denied, 2 N.Y.3d 807, 781 N.Y.S.2d 306 (2004); People v. Perkins, 5
A.D.3d 801, 804, 772 N.Y.S.2d 750, 753 (3d Dep't 2004) ("Clearly, the evidence that
defendant employed a razor to inflict the various wounds upon the victims supports the
conclusion that defendant formed the requisite intent to commit" first degree assault.).

from the pubic bone to the breast bone" was sufficient to establish serious physical injury under N.Y. law.); Gillis v. Edwards, 445 F. Supp. 2d 221, 238 (N.D.N.Y. 2006) ("[I]t is beyond cavil that [victim] sustained serious physical injuries as a result of petitioner's conduct.  She was hospitalized for ten days as a result of her gunshot wound . . . ."); Long v. Lord, No. 03-CV-0461, 2006 WL 1977435 at *10 (N.D.N.Y. Mar. 21, 2006) (Victim's "life-threatening gunshot wound" constituted serious physical injury.); People v. Brown, 57 A.D.3d 260, 261, 869 N.Y.S.2d 410, 411 (1st Dep't 2008) ("Even without the aid of expert testimony, the jury could have readily inferred from the victim's testimony and medical records that his stab wounds to his liver and stomach were life-threatening."); People v. Alston, 45 A.D.3d 398, 399, 845 N.Y.S.2d 310, 311 (1st Dep't 2007) ("The element of serious physical injury required for the first-degree assault conviction was established by evidence of permanent scars."), appeal denied, 10 N.Y.3d 807, 857 N.Y.S.2d 41 (2008); People v. Johnson, 23 A.D.3d 686, 687-88, 802 N.Y.S.2d 801, 803 (3d Dep't 2005) (Victim's facial scar running from his mouth to his ear was sufficient to establish serious physical injury.), appeal denied, 817 N.Y.3d 895, 817 N.Y.S.2d 630 (2006); People v. Barnett, 16 A.D.3d 1128, 1129, 790 N.Y.S.2d 799, 799 (4th Dep't) (Evidence of stab wounds, surgery and an extended hospitalization was sufficient to prove serious physical injury.), appeal denied, 4 N.Y.3d 883, 798 N.Y.S.2d 728 (2005); People v. Bailey, 275 A.D.2d 663, 713 N.Y.S.2d 535, 535-36 (1st Dep't) ("Evidence that [the complainant] had multiple lacerations to the face and neck that required numerous sutures and left permanent scars that were viewed by the jury established the element of serious physical injury."), appeal denied, 95 N.Y.2d 960, 722 N.Y.S.2d 477 (2000).

Here, as in prior cases, "the jury's decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses . . . .  We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence."  Gruttola v. Hammock, 639 F.2d at 928.

Johnson's weight/sufficiency of the evidence habeas claim should be DENIED.

## III.   "UNCHARGED CRIMES" EVIDENCE DID NOT VIOLATE JOHNSON'S DUE PROCESS RIGHT TO A FAIR TRIAL

Johnson claims that Cochrane's testimony that Johnson previously assaulted her and purchased crack cocaine violated his right to a fair trial.  (See Dkt. No. 2: Pet. ¶ 12(2); Dkt. No. 5: Killian Aff. Ex. 1: Johnson 1st Dep't Br. at 36-49.)

The First Department rejected Johnson's claim, holding:

> The court properly exercised its discretion in denying defendant's mistrial motions, made when, at several junctures in her testimony, the victim volunteered uncharged crimes evidence that was not responsive to questions.  The drastic remedy of a mistrial was not warranted, because the curative actions that were either provided by the court, or offered by the court but rejected by defendant, were sufficient to prevent defendant from being prejudiced.

People v. Johnson, 67 A.D. 3d 560, 560, 888 N.Y.S.2d 506, 507 (1st Dep't 2009).

### A.   The Fundamental Fairness Standard

An erroneous state evidentiary ruling that is asserted to be a constitutional violation will merit habeas relief only "'where [the] petitioner can show that the error deprived [him] of a fundamentally fair' trial.'"  Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988) (emphasis in

original).[37]   The test for "fundamental fairness" is whether the excluded or improperly admitted evidence, "'evaluated in the context of the entire record,'"[38] "'create[d] a reasonable doubt [regarding petitioner's guilt] that did not otherwise exist.'" Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.) (quoting the materiality standard defined in United States v. Agurs, 427 U.S. at 112-13, 96 S. Ct. at 2401-02), cert. denied, 464 U.S. 1000, 104 S. Ct. 503 (1983).[39]

The "fundamental fairness" standard applies to the erroneous exclusion or admission of evidence. See, e.g., Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 674 (1990) (The introduction of improper evidence does not violate due process unless the evidence "is so extremely

---

[37]    See also, e.g., Jones v. Stinson, 229 F.3d 112, 120 (2d Cir. 2000); Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.) ("The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'"), cert. denied, 525 U.S. 840, 119 S. Ct. 101 (1998); Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a [habeas] claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial . . . . ").

[38]    "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." United States v. Agurs, 427 U.S. 97, 112-13, 96 S. Ct. 2392, 2402 (1976).

[39]    Accord, e.g., Bell v. Ercole, No. 08-3539-pr, 2010 WL 726023 at *2 (2d Cir. Mar. 4, 2010); Rasmussen v. Filion, 164 Fed. Appx. 56, 57 (2d Cir. 2006); Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Jones v. Stinson, 229 F.3d at 120; Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996); Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992); Blissett v. Lefevre, 924 F.2d 434, 439 (2d Cir.), cert. denied, 502 U.S. 852, 112 S. Ct. 158 (1991); Collins v. Scully, 755 F.2d at 19; Rosario v. Kuhlman, 839 F.2d at 925.

unfair that its admission violates 'fundamental conceptions of justice.'"); <u>McKinnon</u> v. <u>Superintendent, Great Meadow Corr. Facility,</u> 355 Fed. Appx. 469, 473 (2d Cir. 2009) ("[U]nless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable . . . ."); <u>Young</u> v. <u>McGinnis</u>, 319 Fed. Appx. 12, 13 (2d Cir. 2009) ("Improperly admitted evidence can constitute a due process violation where it 'is so extremely unfair that its admission violates fundamental conceptions of justice.'"); <u>Cordon</u> v. <u>Greiner</u>, 225 Fed. Appx. 13, 15 (2d Cir. 2007); <u>Vega</u> v. <u>Portuondo</u>, 120 Fed. Appx. 380, 382 (2d Cir.) ("[T]he admission even of unfairly prejudicial evidence does not violate due process unless, taken in light of the record as a whole, it was sufficiently material to have removed a reasonable doubt that would otherwise have existed as to defendant's guilt."), <u>cert. denied</u>, 846 U.S. 836, 126 S. Ct. 66 (2005); <u>Dunnigan</u> v. <u>Keane</u>, 137 F.3d at 125 ("[f]or the erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'") (quoting <u>Johnson</u> v. <u>Ross</u>, 955 F.2d at 181); <u>Rodriguez</u> v. <u>O'Keefe</u>, No. 96-2699, 122 F.3d 1057 (table), 1997 WL 557622 at *2 (2d Cir. Sept. 9, 1997), <u>cert. denied</u>, 522 U.S. 1123, 118 S. Ct. 1068 (1998); <u>Collins</u> v. <u>Scully</u>, 755 F.2d at 18-19; <u>Roldan</u> v. <u>Artuz</u>, 78 F. Supp. 2d 260, 276 (S.D.N.Y. 2000).[40/]

---

[40/]   For the reasons stated by Judge Block in <u>Dey</u> v. <u>Scully</u>, "[h]armless error analysis is simply inapplicable to [trial] error that only attains constitutional significance when considered in the context of the entire trial because such analysis inheres in the initial finding that the error was constitutionally significant.  A determination that such error was not harmless, after

(continued...)

The final question is how to apply the AEDPA in the context of a fundamental fairness analysis, an issue addressed by the Second Circuit in Jones v. Stinson, 229 F.3d at 120-21. In Jones, the state appellate court decided that the trial court's evidentiary rulings had not denied the defendant a fair trial. Id. at 116. The Second Circuit held that, although it might have found, under the Agurs standard, that one of the trial court's rulings "create[d] a reasonable doubt that did not otherwise exist," the Second Circuit could not conclude that the excluded testimony "would so certainly have created new ground for reasonable doubt that the appellate division's decision [affirming the trial court's ruling] was objectively unreasonable." Id. at 120. The Second Circuit thus denied habeas relief based on the AEDPA's deferential review standard. Id. at 120-21.

### B.      Application to Johnson's Claim

Johnson was not deprived of a fundamentally fair trial when Cochrane testified that Johnson previously hit her and that he gave drugs to the people at the crack house to prevent their interfering with him.

---

40/      (...continued)
having already concluded that it denied the defendant a fundamentally fair trial, would be tautological." Dey v. Scully, 952 F. Supp. 957, 974 (E.D.N.Y. 1997); see also, e.g., Kyles v. Whitley, 514 U.S. 419, 436, 115 S. Ct. 1555, 1567 (1995) ("Agurs . . . opted for its formulation of materiality . . . only after expressly noting that this standard would recognize reversible constitutional error only when the harm to the defendant was greater than the harm sufficient for reversal under Kotteakos."); Washington v. Schriver, 255 F.3d 45, 56-57 (2d Cir. 2001) ("The creation of otherwise non-existent reasonable doubt [under Agurs] satisfies the 'substantial and injurious' standard" under Brecht.) (quoting Jones v. Stinson, 229 F.3d at 120); Coleman v. Greiner, No. 97-CV-2409, 1999 WL 320812 at *4-5 (E.D.N.Y. May 19, 1999).

First, with regard to Cochrane's initial reference to the prior assault, Justice Dawson instructed the jury: "when I sustain any objection you must disregard any answer if one has been given.  And it's stricken from the record, so don't consider it." (See page 12 above.)  At the conclusion of the trial, Justice Dawson reiterated that "[t]estimony which was stricken from the record or to which an objection was sustained must be disregarded by you." (See page 16 above.) The jury is presumed to obey the court's instructions.  See, e.g., Zafiro v. United States, 506 U.S. 534, 540-41, 113 S. Ct. 933, 939 (1993) ("'juries are presumed to follow their instructions'") (quoting Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987)); United States v. Whitten, — F.3d —,  2010 WL 2595315 at *17 (2d Cir. June 30, 2010) ("We presume that juries follow instructions."); United States v. Sabhnani,  599 F.3d 215, 240 (2d Cir. 2010); United States v. Scala, No. 07-2544, 2008 WL 484503 at *1 (2d Cir. Feb. 22, 2008) ("We have no reason to believe that the jury was unable to, or did not, abide by that instruction."); United States v. McClain, 377 F.3d 219, 223 (2d Cir. 2004); Mitchell v. Artus, 07 Civ. 4688, 2008 WL 2262606 at *23 (S.D.N.Y. June 2, 2008) (Peck, M.J.), report & rec. adopted, 2008 WL 3884373 (S.D.N.Y. Aug. 21, 2008); A.S. Goldmen, Inc. v. Phillips, 05 Civ. 4385, 05 Civ. 5496, 2006 WL 1881146 at *32-33 (S.D.N.Y. July 6, 2006) (Peck, M.J.), report & rec. adopted, 2007 WL 2994453 (S.D.N.Y. Oct. 15, 2007); Rosario v. Walsh, 05 Civ. 2684, 2006 WL 1431410 at *23 & n.45 (S.D.N.Y. May 25, 2006) (Peck, M.J.) ("The jury is presumed to obey a court's curative instruction.") (citing cases), report & rec. adopted, 2006 WL 1880958 (S.D.N.Y. July 5, 2006); Kamara v. United States, 04 Civ. 5340, 2005 WL 1337396 at *3 (S.D.N.Y. June 6, 2005).

Second, Justice Dawson gave, or offered to give, curative instructions about Cochrane's improper testimony.  With regard to the drug allegations, Justice Dawson offered to instruct the jury "to disregard any claims by [Cochrane] that [Johnson] possessed any such substance."  (See page 13 above.)  Defense counsel, however, refused the instruction, fearing that it would "magnify" Cochrane's statements for the jury.  (See page 13 above.)  Curative instructions have been found to militate against a finding of constitutional error.  See, e.g., Dowling v. United States, 493 U.S. 342, 353, 110 S.Ct. 668, 674-75 (1990) (Admission of evidence did not violate "fundamental fairness" standard, "[e]specially in light of the limiting instructions provided by the trial judge."); United States v. Elfgeeh,  515 F.3d 100, 127 (2d Cir.) ("Where an inadmissible statement is followed by a curative instruction, the court must assume 'that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant.'") (quoting Greer v. Miller, 483 U.S. 756, 766 n.8, 107 S. Ct. 3102, 3109 n.8 (1987)), cert. denied, 129 S. Ct.

232 (2008).[41/]  Defense counsel, however, rejected the offer of curative instructions.  (See page 13 above.)

Third, Cochrane's fleeting references to the prior incident where Johnson hit her and to drugs at the crack house did not deprive Johnson of a fair trial, given the strong evidence against him.  Cochrane gave consistent testimony regarding the stabbing, corroborated by Carson and by the medical evidence (even if other aspects of Cochrane's testimony were contradictory).  (See page 11 above.)  Furthermore, Cochrane consistently identified Johnson as her assailant.  (See pages 6-11 above.)  The reference to Johnson previously hitting Cochrane, while improper, certainly was mild

---

[41/]      See also, e.g., Romero v. Rock, 08 Civ. 7791, 2010 WL 908844 at *15 (S.D.N.Y. Feb. 2, 2010) ("[A]ny possible prejudice [caused by prosecutor's improper statements] was ameliorated by the trial judge's prompt curative instruction, which the jurors must be presumed to have followed."); Fuentes v. Ebert, 06 Civ. 5813, 2009 WL 1755500 at *15 (S.D.N.Y. June 22, 2009) ("The jury is presumed to follow the trial court's instructions, and the court's curative measures here served to ameliorate any prejudice to Petitioner resulting from any improprieties in the prosecutor's summation."); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *19 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.) (Petitioner not deprived of a fundamentally fair trial where "the trial judge gave a very specific limiting charge to the jury to ensure that jurors considered information about the uncharged crimes only for appropriate purposes, and not on [petitioner's] guilt or innocence of the crimes charged within the indictment."), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005); Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056 at *18 n.29 (S.D.N.Y. June 16, 2004) (Peck, M.J.) ("The jury is presumed to obey a court's curative instruction."), report & rec. adopted, 2004 WL 1656568 (S.D.N.Y. July 23, 2004); Green v. Herbert, 01 Civ. 1188, 2002 WL 1587133 at *16 (S.D.N.Y. July 18, 2002) (admission of prior crimes evidence did not deprive petitioner of a fair trial in light of, inter alia, judge's limiting instructions); Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *31 & n.26 (S.D.N.Y. Nov. 17, 1999) (Peck, M.J.) (rejecting petitioner's argument that "if you throw a skunk into the jury box, you can't instruct the jury not to smell it" and finding that the court's instruction to disregard inadmissible evidence rendered harmless any prosecutorial misconduct) (& cases cited therein).

and non-inflammatory when compared to the charged crime of cutting Cochrane's jugular vein with a knife.  Consequently, the strong evidence of Johnson's guilt renders it unlikely that testimony regarding his "uncharged crimes" deprived him of a fundamentally fair trial.  See, e.g., Reyes v. Ercole, No. 08-CV-4749, 2010 WL 2243360 at *10 (E.D.N.Y. June 1, 2010) (Petitioner was not deprived of a fundamentally fair trial "given the strong, indeed overwhelming, evidence against him."); Fuentes v. Ebert, 2009 WL 1755500 at *16 ("[T]he strength of the evidence against Petitioner militates against any finding that the prosecutor's remarks in summation, even if inappropriate, caused Petitioner actual prejudice."); Clanton v. Rivera, 06 Civ. 4756, 2008 WL 2839712 at *21 (S.D.N.Y. July 22, 2008) (Peck, M.J.) (Even if state court erred in admitting evidence of uncharged robbery, "any such error did not deprive [petitioner] of a fundamentally fair trial, given the strong evidence against him."), report & rec. adopted, 2010 WL 1685414 (S.D.N.Y. Apr. 22, 2010); Kanani v. Phillips, 2004 WL 2296128 at *19 (evidence errors did not deprive petitioner of a fundamentally fair trial where there was strong evidence of his guilt); Oakley v. Artuz, No. 95 CV 2088, 1999 WL 325362 at *2 (E.D.N.Y. May 18, 1999) (Prior crime evidence did not warrant reversal where the "record contained overwhelming evidence of Petitioner's guilt."); Ayala v. Portuondo, 75 F. Supp. 2d 194, 196 (S.D.N.Y. 1999) (Parker, D.J.) ("In view of the overwhelming evidence of [petitioner]'s guilt, this [uncharged crimes] evidence cannot even if it had been erroneously admitted, be said to have denied [petitioner] a fair trial."); Diaz v. Garvin, 92 Civ. 4778, 1995 WL 459250 at *3 (S.D.N.Y. Aug. 3, 1995) (In case with overwhelming guilt against defendant, challenged uncharged crimes evidence "was not crucial, critical, or highly significant to petitioner's

conviction, and therefore its admission did not deprive petitioner of a fair trial. . . . "); People v. Johnson, 280 A.D.2d 683, 684, 721 N.Y.2d 108, 109 (2d Dep't) ("[I]n light of the overwhelming evidence of the defendant's guilt [in rape and sexual assault trial], any error in the admission of this [uncharged violent crime] evidence was harmless."), appeal denied, 97 N.Y.2d 683, 738 N.Y.S.2d 299 (2001).

       In any event, even if the First Department were wrong (which it was not), this Court cannot say that the First Department's decision was an unreasonable application of Supreme Court precedent such as to allow habeas relief under the AEDPA. See, e.g., Mercedes v. McGuire, No. 08-CV-299, 2010 WL 1936227 at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim, that the use of uncharged crimes violated his due process rights, was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); Romero v. Rock, 2010 WL 908844 at *13 (Because "the Supreme Court has yet to establish clearly 'when the admission of prior crimes under state evidentiary laws can constitute a federal due process violation'" the trial court's "decision to admit [such] evidence subject to limiting instructions cannot be said to be 'contrary to' or an 'unreasonable application of' clearly-established federal law."); Tingling v. Donelli, 07 Civ. 1833, 2008 WL 4724567 at *9 (S.D.N.Y. Oct. 24, 2008) ("Not only would Petitioner's claim fail if analyzed under the Second Circuit precedent cited above, but, under AEDPA, it would also fail . . . as the Supreme Court has not directly held that due process is violated by the introduction at trial of

evidence of a defendant's uncharged crimes."); <u>Jones</u> v. <u>Conway</u>, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006) ("Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Appellate Division's rejection of this claim is hardly either contrary to or an unreasonable application of clearly established Supreme Court law."). Accordingly, Johnson's uncharged crimes habeas claim should be <u>DENIED</u>.

## CONCLUSION

For the reasons set forth above, Johnson's habeas petition should be <u>DENIED</u> in its entirety and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6.[42/] Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 640, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Sullivan (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86

---

[42/]    If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from defense counsel. <u>See</u> <u>Lebron</u> v. <u>Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c)

(1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d

Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs.,

892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:       New York, New York
             August 6, 2010

                                              Respectfully submitted,


                                              _____
                                              **Andrew J. Peck**
                                              United States Magistrate Judge


Copies to:    Michael Johnson
              Nancy D. Killian, Esq.
              Judge Richard J. Sullivan

H:\OPIN\JOHNSON-Michael